BRYAN SCHRODER
United States Attorney

KYLE REARDON
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: kyle.reardon@usdoj.gov

Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 3:18-cr-00029-RRB |
| Plaintiff, | ) | |
| v. | ) | |
| HAYDEN BEARD, | ) | |
| Defendant. | ) | |

## GOVERNMENT SENTENCING MEMORANDUM

### SUMMARY OF SENTENCING RECOMMENDATIONS

TERM OF IMPRISONMENT ........................................................................... 97 months

SUPERVISED RELEASE ............................................................................................ Life

SPECIAL ASSESSMENT .................................................................................... $100.00

//

COMES NOW the United States of America, by and through undersigned counsel, and hereby files this Sentencing Memorandum. For the reasons stated herein, the United States respectfully asks the Court to impose a sentence of 97 months' imprisonment, followed by a life term of supervised release.

## I. INTRODUCTION

### a. Investigation[1]

Crime Stoppers Tip about "Hayden B"

In December 2017, an FBI Task Force Officer ("TFO") received an anonymous Crime Stoppers tip. The individual (hereinafter "Individual A") stated that he had recently met another individual named "Hayden B." "Hayden B" was later determined to be the defendant. Individual A stated that the defendant had shown Individual A images child pornography from the defendant's laptop. Among the images shown to Individual A by the defendant was a child pornography video of a young boy whom Individual A believed to be approximately six years of age.

St. Louis Area Information about the Defendant

On January 15, 2018, the TFO was contacted by a detective from the Bellville Police Department in Bellville, Illinois. The detective had recently arrested an individual (hereinafter "Individual B") for possession and distribution of child pornography. Individual B had confessed to the possession and distribution of child pornography as well as using methamphetamine. During the investigation, the detective had served a

---

[1] A detailed summary of the facts is contained within the sealed Final Presentence Report. Docket 50.

Page 2 of 20　　　Govt. Sent. Memo.
United States v. Beard
3:18-cr-00029-RRB

Case 3:18-cr-00029-RRB   Document 59   Filed 03/13/19   Page 2 of 20

search warrant on Individual B's residence and seized Individual B's cell phone. The detective performed a forensic exam on the cell phone. The exam showed that Individual B utilized a social networking application (hereinafter "App A") to communicate with other individuals.

During the forensic examination of Individuals B's cell phone, law enforcement located messages between Individual B and the defendant that occurred between December 13, 2016 and December 16, 2016. The defendant and Individual B engaged in numerous conversations using "App A" regarding their desire to have sex with young boys and girls between the ages of three and five. The defendant also knowingly distributed to Individual B images of child pornography. In many cases, the defendant sent the images and provided graphic details of sexual acts that he wanted to perform on the children shown in the images. One images showed an adult male performing oral sex on a pre-pubescent female between three to five years of age. The defendant also sent Individual B an image that depicted a pre-pubescent female between the ages of three and five being vaginally penetrated by the penis of an adult male.

<u>Search of the Defendant's Residence</u>

On January 19, 2018, the FBI executed a search warrant at the defendant's residence. Located during this search were the defendant's Apple iPhone and his Dell Inspiron laptop. Both devices contained images and videos of child pornography. Located on the devices were more than 600 images and videos of child pornography.

Page 3 of 20  Govt. Sent. Memo.
United States v. Beard
3:18-cr-00029-RRB

Case 3:18-cr-00029-RRB   Document 59   Filed 03/13/19   Page 3 of 20

Including images showing infants, as well as images showing prepubescent children being anally and vaginally penetrated by adult males.

### b. Procedural History

The defendant was arrested pursuant to a Criminal Complaint on January 19, 2018. Docket 1. The Grand Jury returned a true bill on February 22, 2018, charging the defendant with transportation of child pornography, in violation of 18 U.S.C. § 2252(a)(1); and possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). Docket 16. The defendant pleaded guilty to Count Two (possession of child pornography) on July 26, 2018. Docket 40. This plea was entered into pursuant to a plea agreement with the United States. Docket 38. Judgment and sentencing has been set for March 20, 2019. Docket 57.

## II. SENTENCING CALCULATION

### a. Statutory Maximum Sentence

The maximum sentence that may be imposed for possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B), is up to 20 years in prison, a fine of $250,000, and term of supervised release of between five years and life.

### b. Sentencing Guidelines Calculation

The Probation Officer found the total offense level to be 30, and the defendant's criminal history to be I. Presentence Report (hereinafter "PSR") at ¶¶ 33, 37. The resulting Sentencing Guidelines range is 97 to 121 months. Id. at 72.

//

Page 4 of 20

Govt. Sent. Memo.
United States v. Beard
3:18-cr-00029-RRB

Case 3:18-cr-00029-RRB   Document 59   Filed 03/13/19   Page 4 of 20

### c. The Probation Officer's Recommended Sentence

The Probation Officer recommends a sentence of 72 months' imprisonment. PSR at "Sentencing Recommendation." Upon completion of the defendant's term of incarceration, the Probation Officer recommends a 20-year term of supervised release. Id. Neither a fine nor restitution is recommended. Id.

## III. GOVERNMENT'S RECOMMENDATION

The United States asks the Court to impose a guideline sentence of 97 months' imprisonment, followed by a life term of supervised release. This sentence is sufficient, but not greater than necessary, to punish the defendant for his conduct. The sentence also considers the defendant's history and characteristics, and works to protect the public, by deterring the defendant and others from committing similar crimes.

### a. The Nature and Circumstances of the Offense

The defendant engaged in a pattern of downloading, viewing and sharing horrific images of child pornography, including images of toddlers and depictions of sadistic and masochistic conduct. Each one of these documents the sexual assault of an innocent victim. Paroline v. United States, 134 S.Ct. 1710, 1717 (2014) ("The harms caused by child pornography, however, are still more extensive because child pornography is 'a permanent record' of the depicted child's abuse[.]'") (quoting New York v. Ferber, 458 U.S. 747, 759 (1982)). By downloading, viewing, and sharing these images, the defendant added to the harm suffered by those victims. Id., ("The harms caused by child pornography [are]…'exacerbated by [its] circulation.'").

Page 5 of 20     Govt. Sent. Memo.
United States v. Beard
3:18-cr-00029-RRB

Case 3:18-cr-00029-RRB  Document 59  Filed 03/13/19  Page 5 of 20

The harms caused by the defendant's actions are exacerbated by the fact that he freely traded images and used those images in furtherance of his sexual fantasies. As stated by the victim in the "Vicky" series of child pornography images, one of the most popular and frequently traded series of images and videos on the Internet, and whose image formed part of the defendant's collection:

> [I live] every day with the horrible knowledge that someone somewhere is watching the most terrifying moments of my life and taking grotesque pleasure in them.... Every day people are trading and sharing videos of me as a little girl being raped in the most sadistic ways.... They're being entertained by my shame and pain[.]

The defendant was one of the very people about whom "Vicky" spoke – a person who traded images of child pornography in order to satisfy his own sexual desires. For Vicky, "every time [my images] are downloaded I'm exploited again. My privacy is breached and my life feels less and less safe. I will never be able to have control over who sees me raped as a child." The defendant bears some responsibility for the harm caused to the children in the images and videos he downloaded and traded.

The abuse committed by the defendant through his acquisition and distribution of these images is enough to justify the government's requested sentence. See United States v. Hernandez, 795 F.3d 1159, 1169 (9th Cir. 2015) (finding no abuse of discretion in a bottom of the Guideline sentence of 262 months); see also United States v. Duke, 788 F.3d 392 (5th Cir. 2015) (upholding 20-year guideline sentence for defendant who received and distributed 168 videos and 187 still images of child pornography). The United States' requested sentence is all the more reasonable when the Court considers the

Page 6 of 20

Govt. Sent. Memo.
United States v. Beard
3:18-cr-00029-RRB

Case 3:18-cr-00029-RRB   Document 59   Filed 03/13/19   Page 6 of 20

trauma suffered by the victims in his images. According to the Centers for Disease Control and Prevention, children exposed to adverse childhood traumas are at an increased risk of alcohol and drug abuse; poorer academic and work performance; and poorer health, to include depression, sexually transmitted diseases, and unwanted pregnancies. See http://www.cdc.gov/violenceprevention/acestudy.html. In one study, children who have been the victim of childhood sexual abuse are more than twice as likely to attempt suicide, and 40% more likely to marry an alcoholic. See Dube SR, Anda RF, Whitfield, CL, Brown DW, Felitti VJ, Dong M, Giles WH. Long-term consequences of childhood sexual abuse by gender of victim. *Am J Prev Med.* 2005;28:430–438 (available at http://www.ncbi.nlm.nih.gov/pubmed/15894146). When one considers that victims of childhood sexual trauma often live in households with other forms of dysfunction, to include the absence of two parents, and drug and alcohol abuse, it is easy to conclude that their lives are severely impacted and their outcomes less favorable. See Felitti VJ, Anda RF, Nordenberg D, Williamson DF, Spitz AM, Edwards V, Koss MP, Marks JS. Relationship of childhood abuse and household dysfunction to many of the leading causes of death in adults: the adverse childhood experiences (ACE) study. *Am J Prev Med.* 1998;14:245–258 (available at http://www.ncbi.nlm.nih.gov/pubmed/9635069).

  The defendant is not responsible for the initial trauma to the victim's in the images he downloaded and possessed. He is responsible for the harms those children suffer every time their images are traded. By immersing himself in the online world of child

Page 7 of 20   Govt. Sent. Memo.
United States v. Beard
3:18-cr-00029-RRB

Case 3:18-cr-00029-RRB   Document 59   Filed 03/13/19   Page 7 of 20

pornography, the defendant contributed to the cycle of violence that leads to new images of abuse. "Young children were raped in order to enable the production of the pornography that the defendant both downloaded and uploaded-both consumed himself and disseminated to others. The greater the customer demand for child pornography, the more that will be produced." United States v. Goldberg, 491 F.3d 668, 672 (7th Cir. 2007) (citations omitted). The government's requested sentence is warranted in light of this fact.

The United States is well aware that it is seeking a lengthy sentence in this case. This sentence, combined with the term of supervised release will have a significant effect on the defendant's future freedoms and liberty. This imposition on the defendant's future is justified in light of his history and characteristics.

Moreover, when this sentence is compared with the lifetime of victimization suffered by those exploited by the defendant, it is entirely reasonable. The Court must not be influenced by the erroneous belief that it's "sentence affects only the life of the criminal and not the lives of his victims." Id. at 671. The defendant's acts amounted to the sexual exploitation and abuse of those whose images he viewed. See Ferber, 458 U.S. at 759 (1982) (The use of children as subjects of pornographic materials is harmful to the psychological, emotional, and mental health of a child."); see also Adam Walsh Child Safety and Protection Act of 2006, Pub. L. No. 109-248, §501, 120 Stat. 587, 623 (2006) ("The illegal production, transportation, distribution, receipt, advertising[,] and possession of child pornography ... is harmful to the physiological, emotional, and mental

Page 8 of 20  Govt. Sent. Memo.
United States v. Beard
3:18-cr-00029-RRB

Case 3:18-cr-00029-RRB   Document 59   Filed 03/13/19   Page 8 of 20

health of the children depicted in child pornography and has a substantial and detrimental effect on society as a whole.")  As noted above, the victims in this case are real, and justice is served when the people who exploit those victims are given significant sentences of imprisonment.

      **b.**      **The History and Characteristics of the Defendant.**

The United States acknowledges the defendant's history and characteristics.  Two factors stand out – the defendant's childhood with an abusive stepfather, and his substance abuse problems.  Both of these factors support the United States' requested guideline sentence.

As it concerns the defendant's upbringing, his time spent with an abusive stepfather does little to explain or justify his crime.  There is no allegation of prior sexual abuse involving the defendant, or any implication that his stepfather's action significantly impacted the defendant.  Indeed, there is no empirical evidence to support any belief that childhood abuse of any sort contributes to acts of child exploitation later in life.

Of significant concern to the United States is the defendant's documented history with illegal drugs.  This addiction only added fuel to the defendant illegal sexual urges, and remains a threat to his lawful behavior following his release from prison.  For this reason, the United States is seeking a lifetime term of supervised release.  Such a term is necessary to ensure that the defendant has the proper support and incentive to ensure that he does not submit to the demons that led him to his conviction.

Page 9 of 20      Govt. Sent. Memo.
United States v. Beard
3:18-cr-00029-RRB

Case 3:18-cr-00029-RRB   Document 59   Filed 03/13/19   Page 9 of 20

### c. The Seriousness of the Offense

As explained above, the impact this crime has upon its victims makes it among the most serious offenses in the federal code. That fact cannot be denied. The United States' requested sentence is entirely appropriate in this case.

### d. The Need for Adequate Deterrence

#### i. *Specific Deterrence and Protection of the Public*

The United States recognizes that it is seeking a significant sentence of imprisonment in this case. There is nothing wrong in this case with incapacitating the defendant for the 97 months, and then maintaining supervision over him for the remainder of his life. Indeed, such a sentence is entirely appropriate given that the risk of recidivism for individuals like the defendant is "frightening and high." McKune v. Lile, 536 U.S. 24, 34 (2002); see also id. at 33 ("When convicted sex offenders reenter society, they are much more likely than any other type of offender to be rearrested for a new rape or sexual assault" (citing U.S. Dept. of Justice, Bureau of Justice Statistics, Sex Offenses and Offenders 27 (1997); U.S. Dept. of Justice, Bureau of Justice Statistics, Recidivism of Prisoners Released in 1983, p. 6 (1997))); United States v. Gonzalez, 445 F.3d 815, 819 (5th Cir. 2006) (upholding district court sentence which was based in part on the fact that, as the district court stated, "these sorts of folks…they never get better. Sex offenders have the lowest rate of recovery and the highest rate of recidivism of any criminal defendant. This is an addiction that is almost impossible to overcome."); United States v. Pugh, 515 F.3d 1179, 1201 (11th Cir. 2008) ("As Congress has found and as we

Page 10 of 20	Govt. Sent. Memo.
United States v. Beard
3:18-cr-00029-RRB

Case 3:18-cr-00029-RRB   Document 59   Filed 03/13/19   Page 10 of 20

have discussed, child sex offenders have appalling rates of recidivism and their crimes are under-reported.").

Some recent publications have challenged the argument that recidivism among sex offenders is higher than for the general population. The United States Sentencing Commission's 2012 Report on Federal Child Pornography Offenses (hereinafter "Report") found a general rate of recidivism among non-production offenders of 30 percent and a sexual recidivism rate of 7.4 percent. See Report Executive Summary at xv. These rates were based on offenders' arrests or convictions. Id. However, the Report also noted that "a very large percentage of child sexual abuse is unreported." Report at 173. Indeed, the Report admits that [t]he key point, that some child pornography offenders have committed officially undetected contact offenses[,] is not controversial." Id. at 173-74.[2]

Recent anecdotal evidence only confirms what the above study demonstrates. News reports are documenting credible and corroborated sexual abuse and harassment allegations made by mature women against prominent males. These abuses remained dormant for years through a combination of shame and fear. One can only imagine how

---

[2] Peer-reviewed academic studies confirm that rates of arrest and conviction are not valid proxies for contact. In one study, 57.5 percent of individuals being investigated for child pornography crimes with no-known hands-on offending admitted to sexually abusing at least one child. M.L. Bourke, L. Fragomelli, P.J. Detar, M.A. Sullivan, E. Meyle & M. O'Riordan, *The Use of Tactical Polygraph with Sex Offenders*, J. Sexual Aggression: An Intl', Interdisciplinary Forum for Research, Theory & Practice (2014). In another study involving 155 sex offenders, the number of individuals admitting to hands-on offenses increased from 26 percent at the time therapy in the Bureau of Prisons started to 85 percent at the conclusion of therapy. *The 'ButnerStudy' Redux* at 183-91 (2009).

Page 11 of 20                                              Govt. Sent. Memo.
                                                                                United States v. Beard
                                                                                3:18-cr-00029-RRB

Case 3:18-cr-00029-RRB   Document 59   Filed 03/13/19   Page 11 of 20

strong those feelings would be in a child victim. It is easy to see that the underreporting of childhood sexual abuse is a significant issue.

In assessing recidivism, current research has focused on two primary risk factors – antisocial behavior and degree of sexual deviance. <u>See</u> Report i-iv, 7, 207. Anti-social behavior can be described as criminality in thought and behavior and general difficulties in self-regulation. It also includes personality characteristics such as entitlement, lack of empathy, and manipulation of others. Sexual deviance includes any abnormal source of sexual attraction.

There is nothing in the record that measures through appropriate psychological testing the defendant's antisociality or sexual deviance. However, there are a number of red flags in this case that should give the Court pause. As it concerns antisociality, the defendant's substance abuse history is significant to the United States.

The defendant's willingness to engage in sexual banter in which he fantasizes about the abuse of family member is a significant factor the United States believes the Court should consider when measuring sexual deviance. Another factor is pedophilia, which is defined in the Diagnostic and Statistical Manual (DSM) V as a pattern of sexual attraction to children lasting more than six months. The defendant's history and his collection of child pornography images appears to satisfy these criteria.

Absent a full psychological evaluation that relies on generally accepted methods and appropriate psychological testing, the Court should refrain from any precise guess as to the defendant's likelihood to reoffend. Future risk assessments in child sex offenses

Page 12 of 20　　　　　　　　　　　　　　　　　　　Govt. Sent. Memo.
United States v. Beard
3:18-cr-00029-RRB

Case 3:18-cr-00029-RRB   Document 59   Filed 03/13/19   Page 12 of 20

have historically been very inaccurate.  See Terence W. Campbell, Sexual Predator Evaluations and Phrenology: Considering Issues of Evidentiary Reliability, 18 Behav. Sci. & L. 111, 128 (2000).  This is so because of the inherent difficulty in coming up with valid empirical evidence related to these crimes and offenders, including underreporting by victims and offenders.  Bourke, M.L., Hernandez, A.E. (2009) The 'Butner Study' Redux: A Report of the Incidence of Hands-On Child Victimization by Child Pornography Offenders.  Journal of Family Violence, 24(3), 184 (2009) (hereinafter "Butner Study Redux") ("The dearth of empirical knowledge about this population not only has challenged law enforcement and criminal justice officials, but also has hampered mental health professionals.  For example, at the present time, there are no evidence-based protocols to guide the assessment and treatment of these offenders.")  They are no less difficult in this case.

What the Court does know is that the defendant has a sexual interest in children and that this interest manifested itself in illegal ways.  The Court also knows that the defendant has engaged in numerous behaviors over a number of years that demonstrate an increased risk of future offending.  Given these facts, the only way to protect the public is to sentence the defendant to a lengthy term of imprisonment followed by a lifetime term of supervised release.

Furthermore, even if the defendant presents a lower risk of recidivism upon his release from prison, this does not warrant a significantly reduced sentence.  As the Eleventh Circuit stated:  "[a] low risk is not the same as no risk.  Adequate protection is a

Page 13 of 20              Govt. Sent. Memo.
                                            United States v. Beard
                                            3:18-cr-00029-RRB

Case 3:18-cr-00029-RRB   Document 59   Filed 03/13/19   Page 13 of 20

function of two variables: the level of risk that conduct will occur and the level of harm that will be inflicted if that conduct does occur." United States v. Irey, 612 F.3d 1160, 1217 (11th Cir. 2010) (en banc) (citing United States v. Boyd, 475 F.3d 875, 877-78 (7th Cir. 2007) (upholding a sentencing determination that the defendant's acts created a substantial risk of bodily injury to another person in part because "[d]angerousness is a function of the magnitude of the harm that will occur if danger materializes and the probability that it will materialize")). In these types of cases, the harm that befalls to any victim is extreme, and more than justifies a lengthy sentence of imprisonment.

The Court's sentence must deter the defendant from committing any future crimes against children. The defendant's crime makes it clear that he has a pernicious sexual interest in children, and that sexual desire is affected by his drug addiction. While treatment and therapy might allow the defendant to manage that interest, it is naïve to think that this interest will not persist in the defendant upon his release from imprisonment. A sentence of 97 months followed by lifetime supervised release – with the persistent threat of additional jail time upon any relapse - would send a message to the defendant that that will hopefully deter him from acting on those desires in the future.

//
//
//
//
//

Page 14 of 20  Govt. Sent. Memo.
United States v. Beard
3:18-cr-00029-RRB

Case 3:18-cr-00029-RRB   Document 59   Filed 03/13/19   Page 14 of 20

## ii. General Deterrence

In addition to protecting society from the defendant, the United States' requested sentence is also necessary to deter others who exploit children in order to feed the marketplaces at which the defendant shopped.

> Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor. The logic of deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it and so the more will be produced.

United States v. Goldberg, 491 F.3d 688, 672 (7th Cir. 2007) (citations omitted). The Court's sentence matters, and the impact of that sentence will be felt by all who might engage in similar conduct.

The United States is well aware that it is seeking a lengthy sentence in this case. However, when this sentence is compared with the lifetime of victimization suffered by the victims in this case, and the risk that the defendant and those like him present to the public, it is entirely reasonable. The Court must not be influenced by the erroneous belief that it's "sentence affects only the life of the criminal and not the lives of his victims." Id. at 671. The defendant received, possessed, and traded images that documented the abuse of children. With his actions, the defendant transferred to another generation the long-term harm of sexual trauma. See Ferber, 458 U.S. at 759 ("The use of children as subjects of pornographic materials is harmful to the psychological, emotional, and mental health of a child."); see also Adam Walsh Child Safety and Protection Act of 2006, Pub. L. No. 109-248, §501, 120 Stat. 587, 623 (2006) ("The illegal production, transportation,

Page 15 of 20

Govt. Sent. Memo.
United States v. Beard
3:18-cr-00029-RRB

Case 3:18-cr-00029-RRB   Document 59   Filed 03/13/19   Page 15 of 20

distribution, receipt, advertising[,] and possession of child pornography ... is harmful to the physiological, emotional, and mental health of the children depicted in child pornography and has a substantial and detrimental effect on society as a whole."

### e. Protection of the Public from the Defendant

A long period of confinement will incapacitate the defendant. The protection of the public during this period of confinement is direct and obvious. When released, a lifetime term of supervised release is the best remedy available to the Court to continue that protection.

A lifetime term of supervised release will allow the Court to supervise the defendant - monitoring his computer access, social networks, and access to children. Lifetime supervision will also allow the Court to continue to provide mental health services directed at the defendant's sexual interest in children and prior history of drug use. In the United States' view, the potential harm that would occur should the defendant recidivate makes a lifetime term of supervision critical.

### f. The Need for Educational, Vocational, or Other Care or Treatment

The United States does not consider this factor to be significant in the Court's calculation of a term of imprisonment. However, the United States recommends that the defendant be detained at a Bureau of Prisons facility that offers either a Residential Sex Offender Management Program (SOMP), or Non-Residential SOMP.[3] These programs

---

[3] This recommendation is dependent upon space availability and security classification.

Page 16 of 20     Govt. Sent. Memo.
United States v. Beard
3:18-cr-00029-RRB

Case 3:18-cr-00029-RRB Document 59 Filed 03/13/19 Page 16 of 20

will allow the defendant to continue addressing the issues that have led to his paraphilic interest in juveniles.[4]

### g. The Kind of Sentences Available and the Sentencing Range Established by the Sentencing Commission

The United States' requested sentence is within the applicable guideline range.

### h. Sentencing Disparity

The United States requested sentence will not result in an unreasonable disparity. Defendants whose conduct is similar to this one have been given guideline sentences in this district and elsewhere. Moreover, the nature of the defendant's conduct makes the requested sentence more than appropriate.

Recent sentences imposed by this Court and others support the United States' requested sentence. Within the District of Alaska, defendants convicted of possession of child pornography offenses have generally received below guideline sentences. However, in most instances, those sentences involved defendants who had little to no prior criminal history. See United States v. Grey, 3:14-cr-00025-RRB-SAO (77-month below guideline sentence); see also United States v. St. Hilaire, 4:15-cr-00007-RRB (72-month below guideline sentence). Moreover, in several instances, those sentences have been at or near the United States' requested sentence. See e.g., United States v. Evans, 3:10-cr-00118-JWs (72 months); United States v. Cook, 4:08-cr-00024-RRB. Guideline

---

[4] A residential SOMP lasts from 12 to 18 months. Referrals to the program are generally made when an inmate has 36 months remaining on their sentence. As such, given the mandatory minimum sentence, there is no term of imprisonment the Court might impose which would preclude the defendant's voluntary participation in a sex offender program.

Page 17 of 20     Govt. Sent. Memo.
United States v. Beard
3:18-cr-00029-RRB

Case 3:18-cr-00029-RRB Document 59 Filed 03/13/19 Page 17 of 20

sentences have also been given in cases involving the production and receipt and distribution.  See e.g. United States v. Collander, 3:13-cr-00126-SLG (production); United States v. Young, 3:09-cr-00129-JWS (above guideline sentence in production case); United States v. Baldwin, 1:07-cr-00001-TMB (receipt).

      Furthermore, courts in the Ninth Circuit and elsewhere have concluded that in some cases child pornography sentences within the guidelines are proper.  See e.g. United States v. Mikulak, 2015 WL 5438992 (9th Cir. Sept. 16, 2015) (121-month within-Guidelines sentence); Hernandez, 795 F.3d at 1169 (262-month Guideline sentence). However, given the unique facts in every case, the United States cautions against overreliance on recently adjudicated cases.  "While sentences imposed by other courts may be a consideration for a district court, such information does not set a median, floor, or ceiling."  United States v. Miller, 665 F.3d 114, 122 (5th Cir. 2011).  The guideline sentence sought by the United States is entirely appropriate when viewed through the 3553 factors.  See Gall v. United States, 552 U.S. 38, 49-51 (2007)).  The child pornography possessed by the defendant and its impact on the victims in this case, the history and characteristics of the defendant, and the need to deter the defendant and others all argue in favor of a lengthy term of imprisonment.  Such a term would not result in an unwarranted sentencing disparity.

//

//

//

Page 18 of 20       Govt. Sent. Memo.
United States v. Beard
3:18-cr-00029-RRB

Case 3:18-cr-00029-RRB   Document 59   Filed 03/13/19   Page 18 of 20

### i. Restitution

Crime victims have numerous rights under federal law. One is the right to receive "full and timely restitution as provided by law." 18 U.S.C. § 3771(a)(6). Federal prosecutors are tasked with making "their best efforts to see that crime victims are notified of, and accorded, the rights described in subsection (a)." 18 U.S.C. § 3771(c)(1). Pursuant to 18 U.S.C. § 2259(b)(4), the issuance of a restitution order for offenses under Chapter 110 of the United States Code – which encompasses all of the defendant's offenses of conviction – is "mandatory."

Numerous victim impact statements and requests for restitution have been submitted by victims whose images were downloaded and possessed by the defendant. The United States is working with victims and their counsel to determine if the parties wish to pursue these claims. Accordingly, the United States requests that a restitution hearing be set for a date approximately 60 days after the Imposition of Sentence.

## IV.  CONCLUSION

For the reasons stated herein, the United States respectfully asks the Court to sentence the defendant to 97-months' imprisonment, to be followed by a lifetime term of supervised release. This sentence recognizes the nature and circumstances of the defendant's crime, his defendant's history and characteristics, as well as the seriousness

//

//

Page 19 of 20

Govt. Sent. Memo.
United States v. Beard
3:18-cr-00029-RRB

Case 3:18-cr-00029-RRB   Document 59   Filed 03/13/19   Page 19 of 20

of his conduct. The sentence will also serve as a deterrent to future crime and will protect the public from the defendant.

      RESPECTFULLY SUBMITTED this 13th day of March, 2019, in Anchorage, Alaska.

                                  BRYAN SCHRODER
                                  United States Attorney

                                  *s/ Kyle Reardon*
                                  KYLE REARDON
                                  Assistant U.S. Attorney
                                  United States of America

**CERTIFICATE OF SERVICE**

I hereby certify that on March 13, 2019,
a copy of the foregoing was served
electronically on:

Gretchen Staft, Assistant Federal Defender

*s/ Kyle Reardon*
Office of the U.S. Attorney

Page 20 of 20      Govt. Sent. Memo.
United States v. Beard
3:18-cr-00029-RRB

Case 3:18-cr-00029-RRB   Document 59   Filed 03/13/19   Page 20 of 20